**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**HEXAMEDICS, S.A.R.L., a French corporation,**

Plaintiff,

v.

**GUIDANT CORPORATION, an Indiana corporation, and INTERMEDICS, INC., a Delaware corporation,**

Defendants,

Civil No. 00-2532 (PAM/JGL)

**O R D E R**

---

APPEARANCES

William Pentelovitch, Esq., Wayne Moskowitz, Esq., and Harry Susman, Esq., for Plaintiff Hexamedics.

Brent Benoit, Esq., and Robert L. Schnell, Jr., Esq., for Defendants Guidant Corporation and Intermedics, Inc.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on October 31, 2001 on Defendants' Joint Motion to Compel (Doc. No. 65) and Plaintiff's Motion to Compel (Doc. No. 67). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

NOV 7 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. DEFENDANTS' MOTION TO COMPEL

Defendants seek discovery responsive to Intermedics' Interrogatory 11(c) and Request for Production 146, and Guidant's Interrogatories 3(o) and 3(v). Defendants also seek to compel Hexamedics' Document HEX 37264, which was originally withheld on the basis of attorney-client privilege but inadvertently disclosed to Defendants during discovery. Defendants' moving papers included other discovery requests, but they represented at the hearing that those requests had become moot.

### A. Intermedics' Interrogatory 11(c)

Interrogatory 11(c) requests information related to volume bonus payments and asks Plaintiff to identify "documents for each financial institution or account reflecting receipt of such payments and the use of such payments, once received by Hexamedics." In response to the interrogatory, Plaintiff averred that the money was deposited into Hexamedics' general operating account, and there is no way to track how the money from each payment was spent. However, Plaintiff did provide its bank records to Defendants and specified that money in its general operating account was used "for general operating costs including the payment of commissions to agents, reimbursement for reduced commissions on public tenders, costs related to retaining its sales representatives and trying to hire new sales representatives,

and other costs." Nevertheless, Defendants now seek to compel Plaintiff to explain precisely how the money from the volume bonus payments was used.

Defendants claim that Gilles Ascher, a Hexamedics principal, knows how the volume bonus payments were spent. It is true that Ascher testified in his deposition that he could calculate the amounts of the bonus Plaintiff gave to salesmen. Therefore, if Ascher possesses or can calculate the requested information, Plaintiff must provide it to Defendants. Defendants submit that Plaintiff was obligated to use the volume bonus either to recruit new sales staff or to offset discounts to public institutions. If this assertion is true, the information sought is relevant to this case. However, if Plaintiff or Ascher cannot provide information about how the volume bonus was spent, Plaintiff must provide a sworn attestation to Defendants. The Court cannot compel Plaintiff to produce information it does not have.

Defendants' motion to compel is granted as to Interrogatory 11(c), but its request for sanctions is denied. Defendants' request for sanctions is not only unwarranted but also contravenes Federal Rule of Civil Procedure 37(b), which requires a violation of a previous court order.

**B. <u>Intermedics' Request for Production 146</u>**

Intermedics' Request for Production 146 asks for all documents related to any accountant's review, certification, or report concerning Plaintiff's financial condition or financial books and records from 1990 to present.

Specifically, in the current motion, Defendants seek information regarding Novacor, an former affiliate of Plaintiff, for the time period of 2000 through the present. Plaintiff previously provided financial information about Novacor for 1998 and 1999, although it disputes that the Novacor documents are responsive to the request or relevant to Plaintiff's financial condition.

The Federal Rules of Civil Procedure contemplate liberal discovery. The information sought only need be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 501 (1947). A party is allowed to fully explore the relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Rule 26(b)(1) gives courts "the authority to confine discovery to the claims and defenses asserted in the pleadings," but recognizes courts' discretion to permits broader discovery depending on the particular circumstances of a case. Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000).

The Novacor documents for 2000 through the present are not relevant to this lawsuit. According to Plaintiff's uncontroverted assertion, it no

longer had a business relationship with Novacor during this period of time. Although Novacor's performance affected Plaintiff's consolidated net profit on its 1997 tax return, as Plaintiff acknowledges, Defendants have not shown that Novacor's performance from 2000 onward bears on an issue in this case. Furthermore, the Court agrees with Plaintiff that the Novacor documents are not responsive to the propounded request, and Plaintiff's production of the 1998 and 1999 documents as a courtesy does not waive its current objection. Defendants' motion to compel is denied as to Request 146.

**C. Guidant's Interrogatory 3(o)**

Guidant's Interrogatory 3(o) requested the annual total of discounts given on the sale of Intermedics' products to public institutions. Defendants argue that the information is relevant to Plaintiff's claims for unpaid volume bonuses and to Defendants' counterclaims for breach of contract and fraud. Plaintiff respond that Kontron, the company responsible for billing its customers, is in possession of the relevant invoices. Plaintiff therefore directed Defendants to a category of documents, pursuant to Federal Rule of Civil Procedure 33(d).

Significantly, Guidant now owns Kontron. Thus, Defendants are in the best position to discover the annual total of discounts because they have access to all of the relevant invoices. Plaintiff did not keep a complete set of the

invoices. Accordingly, the Court finds that the burden under Rule 33(d) would be greater on Plaintiff. Defendants' motion is denied as to Interrogatory 3(o).

**D. Guidant's Interrogatory 3(v)**

Guidant's Interrogatory 3(v) requests information relating to any payment, gift, or reimbursement made by Hexamedics, Ascher, or Francoise Guery to any doctor, clinic, or hospital that purchased Intermedics' products. Plaintiff responded by directing Defendants to an accounting database, as provided by Rule 33(d).

Although Rule 33(d) permits a party to produce business records if the burden of ascertaining the answer to the interrogatory is equal on the parties, the rule also requires the producing party to specify the records "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R. Civ. P. 33(d). Defendants credibly explain that they did not create the database, are not familiar with its format, and are not familiar with the software. Consequently, the burden is greater on Defendants than on Plaintiff. Plaintiff must either respond directly to the interrogatory without reference to Rule 33(d) or provide a detailed specification as required by Rule 33(d). Defendants' motion is granted as to Interrogatory 3(v).

**E. <u>Hexamedics' Document HEX 37264</u>**

Hexamedics' Document HEX 37264, a letter to Ascher from his lawyer, was inadvertently produced to Defendants by Plaintiff. In accordance with the protective order, Defendants returned the document to Plaintiff. However, Defendants now claim that the document contains outcome-determinative evidence, specifically that the statute of limitations on a French statutory claim lapsed prior to the filing of this action, and therefore, Plaintiff has impliedly waived any possible privilege. Plaintiff responds that the protective order in place provides that if a party inadvertently produces confidential, privileged information, it may be retrieved upon request, and the inadvertent production shall not be deemed a waiver of the privilege. Plaintiff further argues that the doctrine of implied waiver is inapplicable in this case.

If not for the terms of the protective order, the inadvertent production of the document might have waived the privilege. However, the Court need not make that determination. Defendants have not shown any persuasive reason for not enforcing the clear terms of the stipulated protective order. The protective order was created by learned counsel and agreed to by the parties who deliberately chose to modify the otherwise applicable law concerning inadvertent disclosure of privileged documents. Thus, the inadvertent disclosure of the document did not vitiate its privileged status. <u>See</u> <u>VLT Corp. v. Unitrode Corp.</u>, 194 F.R.D. 8, 19 (D. Mass. 2000); <u>Eutectic Corp.</u>

v. Metco, Inc., 61 F.R.D. 35, 42 (E.D.N.Y. 1973). In the cases on which Defendants rely, there were no applicable protective orders.

Turning to Defendants' implied waiver argument, the Court finds that Plaintiff did not implicitly waive the privilege. Two factors are particularly relevant to determine whether there has been an implied waiver: implied intention, and fairness and consistency. See Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982). Without expounding on these factors, the Eighth Circuit recognized an implied waiver when a client places the attorney-client relationship at issue or when a client asserts his reliance on the attorney's advice. See id. (citations omitted). Neither situation is present here.

The present case is also unlike Medtronic, which Defendants cite for its three-part test: "(1) assertion of the privilege is a result of an affirmative act; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant; and (3) application of privilege would deny the opposing party access to information vital to its defense." Medtronic, Inc. v. Intermedics, Inc., 162 F.R.D. 133, 135 (D. Minn. 1995) (citation omitted). Defendants argue that the affirmative act is Hexamedics' filing of its French statutory claim. However, this argument is unavailing. As Plaintiff succinctly observes, "[i]f merely bringing suit waived the privilege as to all attorney-client communications relevant to the claims asserted, the privilege would effectively cease to exist." Second, Plaintiff has not affirmatively placed

the legal advice at issue; rather, Defendants seek to use the information to prove their statute of limitations defense. Third, maintaining the privilege would not deny Defendants access to vital information. The letter contains legal opinions, not factual information. It is undisputed that the attorney-client privilege does not preclude disclosure of factual information. See id. at 1205. Defendants are therefore free to seek factual information during discovery and to make their own legal determination as to whether Plaintiff violated the statute of limitations. Fourth, the information contained in the letter is not vital to Defendants' position. The subject matter of the letter relates to Plaintiff's potential claim against Kontron, not Defendants Guidant and Intermedics.

Moreover, the letter contains opinion work product, which is not subject to implied waiver. See Baker v. Gen. Motors Corp., 209 F.3d 1051, 1055 (8th Cir. 2000) (declining to resolve the issue but expressing skepticism about opposing argument) (citing In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988)). Opinion work product contains a lawyer's mental impressions, conclusions, and legal theories, and is discoverable only in rare and extraordinary situations. See id. at 1054 (citations omitted). Document HEX 37264 contains a lawyer's legal opinions and recommendations, and Defendants have not shown this to be a rare or extraordinary situation.

The letter should remain privileged. The Court declines to compel Plaintiff to produce Hexamedics' Document HEX 37264.

## II. PLAINTIFF'S MOTION TO COMPEL

Plaintiff moves the Court for an order compelling production of documents withheld by Defendants on the ground of attorney-client privilege. There are two categories of allegedly privileged documents: one concerning documents seeking or requesting legal advice and one involving inter-company communications. Defendants have submitted the documents to the Court for an in camera review.

### A. Documents Seeking or Requesting Legal Advice

Plaintiff claims that certain documents listed on Defendants' privilege log are not privileged because the communications were sent to an in-house lawyer merely to create the appearance of a privilege and do not concern the rendering of legal advice. The documents at issue are 10, 14, 16, 44, 47, 52, 56, 64, 74, 78, 96, and 99. In deciding this issue, the Court examined the documents and the parties' submissions, giving particular consideration to the Declaration of John J. Lapke, who was the General Counsel of Guidant Europe from August 1997 through March 2001.

The attorney-client privilege protects communications made between a lawyer and a client in confidence for the purpose of seeking, obtaining, or providing legal assistance. See Restatement (Third) of the Law

Governing Lawyers § 118 (Proposed Final Draft 1996); Fed. R. Evid. 503; Kobluk v. Univ. of Minn., 574 N.W.2d 436, 440 (Minn. 1998) (quotation omitted). Where a corporation is the client, employees frequently possess the information needed by the attorney. See Upjohn Co. v. United States, 449 U.S. 383, 391 (1981).

Document 10 is a memorandum from J.R. Hazard addressed to Lapke and others, pertaining to legal aspects of Guidant France's relationship with Kontron. Upon review of the document, the Court finds that the memorandum is protected by the attorney-client privilege.

Document 14 is a series of e-mails regarding the advice of outside counsel and includes communications between Lapke and Maria Degois Sainz. Lapke provides legal advice and rclays advice from outside counsel. The e-mails are clearly protected by the attorney-client privilege.

Document 16 is an e-mail from Juan Vidal to Sainz, both of whom are non-lawyers. Lapke was a copied recipient of the communication. Based on Lapke's explanation of why the communication was sent to him, the Court finds that the document is protected by the attorney-client privilege.

Document 44 is a series of e-mails in which Lapke was a direct recipient. The purpose of including Lapke was to inform him of facts so that he could render legal advice and obtain advice from outside counsel. The Court finds that the e-mails are protected by the attorney-client privilege.

Documents 47, 52, 64, and 96 are comprised of e-mails in which Lapke was a copied recipient. Upon review of the documents, the Court finds that Lapke received the communications to inform him of certain facts so that he could render legal advice or obtain outside counsel, as appropriate. The documents are therefore privileged.

Document 56 is a series of e-mails involving direct communications between Lapke, David Wise, and Ralph Hall, who is the General Counsel for Cardiac Pacemakers, Inc., a subsidiary of Guidant. After reviewing the content of the communication, the Court finds that the document is privileged.

Documents 74, 78, and 99 include direct communications to and from Lapke. Upon review of the documents, the Court concludes they are privileged.

The attorney-client privilege protects only communications, not underlying facts. See id. at 395-96 (quotation omitted). In this case, Lapke's declaration and the privilege log provide Plaintiff with the names of non-lawyer employees who possess knowledge of the underlying facts. While it might be more convenient for Plaintiff to obtain the facts from the documents now at issue, "such considerations of convenience do not overcome the policies served by the attorney-client privilege." Id. at 396. Plaintiff is not entitled to discover the documents pertaining to legal advice.

### B. Inter-Company Communications

Plaintiff claims that certain documents listed on Defendants' Privilege Log are not privileged because the communications were shared between a parent and a subsidiary corporation.[1] Plaintiff recognizes that the attorney-client privilege is applicable to inter-company communications when there is a common legal interest, but asserts that Intermedics and Guidant have different legal interests. According to Plaintiff, Defendants have already elected to "erect a Chinese wall" between them regarding their legal obligations under the Kontron Distribution Agreement, and therefore, they cannot now claim a common legal interest.

Attorney-client privileged communications shared between parent and wholly-owned subsidiary corporations do not lose their protected status; that is, a corporate client includes both parent and subsidiary companies. See Roberts v. Carrier Corp., 107 F.R.D. 678, 687 (N.D. Ind. 1985) (citing Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1184-85 (D.S.C. 1974); United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 359 (D. Mass. 1950); Ins. Co. of N. Am. v. Superior Court, 166 Cal. Rptr. 880 (Cal. App. 1980)); United States v. Am. Tel. & Tel. Co., 86 F.R.D. 603, 616 (D.D.C. 1979); Crabb v. KFC Nat'l Mgmt. Co., No. 91-5474, 1992 WL 1321, at *3 (6th Cir. Jan.

---

[1] The documents at issue are 14, 16, 34, 44, 52, 84, 92, 99, and 105.

6, 1992) (citations omitted); Music Sales Corp. v. Morris, No. 98CIV.9002, 1999 WL 974025, at **7-8 (S.D.N.Y. Oct. 26, 1999) (citations omitted).

The "common interest" doctrine applies to distinct corporations to protect shared, privileged communications when the entities have a "substantial identity of legal interest in the matter in controversy." Am. Tel. & Tel. Co., 86 F.R.D. at 616; see also Duplan, 397 F. Supp. at 1184-85; Music Sales, 1999 WL 974025 at *7. Thus, corporations can be treated as a single client for attorney-client privilege purposes if they either are closely affiliated or share a common legal interest.

In this case, Plaintiff apparently is unaware that the privilege applies in an "either/or" situation and argues only that Defendants have divergent legal interests. However, Intermedics is a wholly-owned subsidiary of Guidant, and the privilege is therefore viable.[2] Plaintiff's motion to compel is denied in this respect.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

[2] The Court notes that all of the documents at issue were created after February 1, 1999, the date on which Guidant acquired Intermedics.

(1) Defendants' Joint Motion to Compel (Doc. No. 65) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Plaintiff's Motion to Compel (Doc. No. 67) is **DENIED**.

Dated: November______, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500